Filed 8/7/25  P. v. Compian CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER JOSEPH COMPIAN,<br><br>Defendant and Appellant. | B333792<br><br>(Los Angeles County<br>Super. Ct. No. VA138169) |

APPEAL from judgment of the Superior Court of Los Angeles County, Andrew C. Kim, Judge.  Remanded with direction.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie C. Brenan, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted Christopher Compian of various crimes, and a court sentenced him to a prison term that included 2 five-year enhancements under Penal Code[1] section 667, subdivision (a)(1).  Thereafter, the trial court resentenced Compian under section 1172.1 but declined to exercise its discretion to dismiss the five-year enhancements.  After the resentencing hearing and while this case was pending appeal, our California Supreme Court decided *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), which clarified how a court should determine whether to dismiss an enhancement.  Compian appeals, contending that the trial court was unaware of the scope of its discretion in light of *Walker*.  We disagree with that contention.  However, we agree with his other contention that the trial court failed to calculate his actual credits.  We therefore remand with the direction to the trial court to calculate Compian's actual credits but otherwise affirm the judgment.

## BACKGROUND

I.      The underlying conviction and sentence

In 2015, Compian and his wife took items from a grocery store without paying for them.  A store employee asked if they had a problem, and Compian pulled out a gun and told the employee to back off.

In 2016, a jury convicted Compian of second degree robbery (§ 211; count 1) and of possession of a firearm by a felon (§ 29800,

---

[1]      All further undesignated statutory references are to the Penal Code.

2

subd. (a)(1); count 2).[2]  At the April 21, 2017 sentencing hearing, defense counsel argued, in support of a *Romero*[3] motion, that Compian had diabetes and posttraumatic stress disorder, was bipolar, suffered from mental illness, and had been addicted to drugs since age 13.  The court then found that Compian had two prior convictions, one from 1980 and the second from 1992, within the meaning of the Three Strikes law and granted the *Romero* motion to strike the 1980 conviction.  The court sentenced Compian to the high term of five years on count 1, doubled to 10 years; to 2 five-year terms under section 667, subdivision (a)(1); and to 16 months on count 2.  His total sentence therefore was 21 years 4 months.

II.    Resentencing proceedings

In 2022, the Department of Corrections and Rehabilitation (the department) notified the trial court it had authority to resentence Compian under section 1172.1 (former section 1170.03).  Specifically, the trial court now had discretion to strike the five-year enhancements that had been imposed under section 667, subdivision (a)(1).

The department submitted with its notification a cumulative case summary and evaluation report.  The report summarized Compian's juvenile and adult criminal history, and parole history.  It also stated that Compian had three rules violation reports (two in 2020 and one in 2021), one counseling

---

[2]    The jury deadlocked on a section 12022.53, subdivision (b), gun use allegation and the court dismissed the allegation in the interest of justice.

[3]    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

3

chrono[4] for disobeying an order, and that he was currently a housing unit clerk/porter for which he had received one exceptional and nine above satisfactory marks.  Compian had not followed through on self-help activities.  His mental health status was "listed as Correctional Clinical Case Management System Level of Care."

The trial court scheduled a status conference, and the parties submitted briefing.

### A.  *The People's resentencing brief*

The People in their brief reviewed Compian's extensive criminal history, which included juvenile adjudications, multiple violations of the Vehicle and Health and Safety Codes, burglaries in 1991 and 1992, and a petty theft with a prior for which he was sentenced to 25 years to life.  After serving 16 years of that sentence, Compian was resentenced under Proposition 47 and released, but he soon reoffended.  In 2017, while incarcerated for the current offenses, Compian secreted heroin and methamphetamine in his body on behalf of the Mexican Mafia.  Compian was charged with crimes arising out of this conduct, and pled guilty to possessing a controlled substance in prison (§ 4573.6, subd. (a)) and sentenced to three years in prison.  Thus, Compian had not been free from incarceration for any significant time as an adult.

While incarcerated and as of June 2023, Compian had not earned credits, had failed to maintain membership in a substance

---

[4]     A "chrono" refers to the department's form used to document information about an inmate's behavior, including disciplinary action.  (*People v. Gibson* (2016) 2 Cal.App.5th 315, 328, fn. 5.)

4

abuse recovery group, had not completed a substance abuse treatment program or other self-help program, and his Central file did not contain any laudatory chronos of recognition. Compian had minimal disciplinary history during his current prison term, although he had a serious rules violation for an assault on a prisoner and three other serious rules violations for possessing a cellphone, contraband, and refusing to accept housing or delaying a peace officer. His file also contained rules violations from prior terms of incarceration.

Compian was a Level III inmate, with Level IV being the highest security risk. He was considered high risk for substance abuse, criminal personality, and education, anger, and employment problems. He was an active member of a prison gang.

The People urged that Compian remained a risk to public safety but not an undue one as defined in section 1170.18. For that reason, the People asked the court to reduce his sentence by eight months by not doubling the sentence on count 2 and to therefore resentence him to a total term of 20 years 8 months.

B.    *Compian's resentencing brief*

In his briefing, Compian argued that his continued incarceration was no longer in the interest of justice based on his age of 63, his degenerative disc disease, and his efforts to rehabilitate. Further, he did not pose an unreasonable risk of danger to public safety. He therefore asked the court to strike the 2 five-year enhancements under section 1385 and Senate Bill No. 1393,[5] to impose the midterm of three years on count 1

---

[5]    Effective January 1, 2019, Senate Bill No. 1393 gave trial courts authority to strike section 667, subdivision (a)(1),

doubled to six years, and to impose 16 months on count 2, for a total prison term of seven years four months.

In support of his resentencing request, Compian attached two laudatory chronos and a certificate showing he completed viral control training in 2020.  Compian also submitted a letter dated 2021 from a correctional officer expressing support for Compian's early release from prison.  In the officer's opinion, "a prisoner should be considered for early release when he has served enough time to be eligible and is no longer deemed a threat to society."  In his 11 years as a correctional officer, this was the first time the officer felt compelled to support a prisoner's release.  On several occasions, the officer saw Compian use his influence to persuade other inmates to avoid violence.  Compian showed compassion to others, had earned other inmates' and staff respect, and had been selected to be a housing unit clerk from 190 inmates.

C.     *The resentencing hearing*

At the August 28, 2023 resentencing hearing, the trial court found that Compian did not pose an undue risk under section 1170.18 (that is, he was not at risk of committing a super strike); however, he had an "abysmal criminal history."  The trial court noted that Compian did not have "a whole lot of improvement in institutional adjustment," he had possessed weapons in custody and, as recently as 2017, had also possessed contraband and narcotics, he had not "seriously participated in programming" despite receiving some laudatory commendations, and he used a gun during the current offense.  The trial court

_____

enhancements.  (See generally *People v. Alexander* (2020) 45 Cal.App.5th 341, 344.)

6

said it had considered Compian's age and physical condition but would not exercise its discretion to dismiss the five-year priors.

The trial court resentenced Compian to the midterm of three years, doubled to six years, to 2 five-year terms under section 667, subdivision (a)(1), and to eight months doubled to 16 months on count 2, for a total prison term of 17 years 4 months. The trial court directed the department to calculate Compian's actual and conduct credits.

After the trial court announced its judgment, it asked defense counsel if he wanted to augment the record. Counsel said no but added that Compian had been hopeful the trial court would strike one of the five-year priors. Counsel again pointed out that Compian was 63 years old and in poor health, so he asked the court to reconsider striking at least one enhancement. In response, the trial court repeated that it had considered Compian's medical issues, but, even so, would not strike a five-year prior.

## DISCUSSION

### I. General legal principles and standard of review

Section 1172.1, subdivision (a)(1), authorizes a court to recall and resentence a defendant convicted of a felony "at any time" upon the department's recommendation. The court may resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided the sentence is no greater than the initial sentence. (§ 1172.1, subd. (a)(1).)

The resentencing court shall consider postconviction factors, including, but not limited to, the defendant's disciplinary record and record of rehabilitation while incarcerated; evidence reflecting that age, time served, and diminished physical

7

condition, if any, have reduced the defendant's risk for future violence; and evidence reflecting that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice. (§ 1172.1, subd. (a)(5).) Also, the court shall consider if the defendant has experienced psychological, physical, or childhood trauma. (*Ibid.*) There is a presumption in favor of recall and resentencing, and the presumption may be overcome only if the court finds that the defendant currently poses an unreasonable risk of danger to public safety, as defined in section 1170.18, subdivision (c). (§ 1172.1, subd. (b)(2).) " '[U]nreasonable risk of danger to public safety' " is "an unreasonable risk the petitioner will commit a new violent felony within the meaning of" section 667, subdivision (e), which lists felonies known as super strikes. (§ 1170.18, subd. (c); *People v. Braggs* (2022) 85 Cal.App.5th 809, 819.) The presumption favors recalling the defendant's sentence, but the sentence ultimately imposed is left to the court's discretion without further consideration of the presumption. (*Braggs*, at pp. 819–820.)

In resentencing the defendant, the court "shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2).) As relevant here, Senate Bill No. 81 (2021–2022) effected a change in law by adding subdivision (c) to section 1385. That subdivision provides, "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c).) "In exercising its discretion under

8

this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

Mitigating circumstances include where multiple enhancements are alleged in a single case, in which instance, "all enhancements beyond a single enhancement shall be dismissed"; application of an enhancement could result in a sentence of over 20 years, in which instance, the enhancement shall be dismissed; the current offense is connected to mental illness; the current offense is connected to prior victimization or childhood trauma; the current offense is not a violent felony as defined in section 667.5, subdivision (c); and the enhancement is based on a prior conviction that is over five years old. (§ 1385, subd. (c)(2).)

While this case was pending appeal, our California Supreme Court clarified in *Walker*, *supra*, 16 Cal.5th 1024 how trial courts should apply section 1385, subdivision (c). The court had granted review on whether " 'the amendment to Penal Code section 1385, subdivision (c) that requires trial courts to "afford great weight" to enumerated mitigating circumstances (Stats. 2021, ch. 721) create[s] a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety[.]' " (*Walker*, at p. 1031.)

9

*Walker* held that section 1385, subdivision (c), does not create a rebuttable presumption. Instead, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Walker*, *supra*, 16 Cal.5th at p. 1029) The court then addressed what it means for a mitigating circumstance to weigh greatly in favor of dismissing an enhancement. (*Id.* at p. 1034.) The court found that resentencing courts must give special emphasis (*id.* at p. 1036) or "assign significant value" (*id.* at p. 1038) to the enumerated mitigating factors. "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id.* at p. 1036; see also *id.* at p. 1038.)

We review a trial court's sentencing decisions for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847; accord *People v. Carmony* (2004) 33 Cal.4th 367, 375.) The abuse of discretion standard is highly deferential and requires us to follow two fundamental precepts. (*Carmony*, at p. 376.) First, the party attacking the sentence has the burden to clearly show the sentencing decision was irrational or arbitrary, and absent such a

10

showing, we presume that the trial court acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. (*Id.* at pp. 376–377.) Second, we will not reverse a decision merely because reasonable people might disagree, as we are not allowed to substitute our judgment for the trial court's judgment. (*Id.* at p. 377.) "Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) In such a case, we remand for resentencing unless the record clearly indicates that the trial court would have reached the same conclusion even if it had known it had such discretion. (*Ibid.*; accord, *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 231.)

II.     The trial court did not abuse its discretion

Compian contends that remand is required so that the trial court can reconsider whether to dismiss his five-year enhancements because it did not have the benefit of *Walker* at the resentencing hearing. The Attorney General responds that Compian has forfeited the issue and, in any event, no abuse of discretion occurred.

11

A.    *Forfeiture*

Complaints about how a trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 356.)  "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing."  (*Id.* at p. 353.)

Here, Compian's trial counsel did ask the trial court to dismiss the five-year enhancements under section 1385, subdivision (c), both in his written brief and at the resentencing hearing.  The Attorney General acknowledges this, but argues that Compian's cursory treatment of the issue and failure to discuss the mitigating circumstances nonetheless constitute a forfeiture.

Compian's arguments in his briefs and at the resentencing hearing why the five-year enhancements under section 1385, subdivision (c), should be dismissed were certainly desultory.  He did not, for example, argue that Compian's substance abuse constituted a mental illness (§ 1385, subd. (c)(2)(D)) or that he suffered prior victimization or childhood trauma (§ 1385, subd. (c)(2)(E)).  Nor did he highlight that the enhancements were based on convictions more than five years old.  (§ 1385, subd. (c)(2)(H)).

Nonetheless, we cannot find that Compian forfeited the issue.  As we have said, counsel raised the issue in his written brief.  And at the resentencing hearing, counsel specifically asked the trial court to exercise its discretion to strike at least one five-year enhancement, citing Compian's poor health.  To be sure, counsel could have more cogently laid out any evidence

12

supporting the mitigating circumstances; for example, there were multiple enhancements (§ 1385, subd. (c)(2)(B)), and the prior convictions were based on enhancements from 1980 and 1992, and therefore were more than five years old (§ 1385, subd. (c)(2)(H)). And he could have made a connection between Compian's substance abuse and any mental illness. Even so, the relevant facts were in the record, i.e., the age of the prior convictions and that Compian began abusing substances at age 13. The record shows that the trial court knew about this evidence because it said it had read the department's request for resentencing (which cited the discretion given to courts to strike enhancements under section 1385, subdivision (c)), both parties' briefs, the abstract of judgment, and the transcript from the original 2017 sentencing hearing.

We therefore do not agree that Compian forfeited the issue.

B.  Walker *does not require remand*

Turning to the merits, we cannot conclude that the trial court was unaware of the scope if its discretion based on *Walker*. Rather, when Compian's resentencing hearing was held in August 2023, section 1385, subdivision (c), had been in effect for almost two years. The statute was clear that a trial court "shall" dismiss an enhancement if it is in the furtherance of justice and that proof of one or more mitigating circumstances "weighs greatly" in favor of dismissing an enhancement, unless doing so would endanger public safety. (§ 1385, subd. (c)(1), (2).) Therefore, the trial court clearly was aware it had discretion to dismiss an enhancement.

Similarly, as for the trial court not knowing the scope of its discretion, this is not a case where legislation affecting how a trial court exercises its sentencing discretion became effective

13

after a defendant was sentenced and before the judgment became final.  (See, e.g., *People v. Salazar* (2023) 15 Cal.5th 416 (*Salazar*).)  Instead, at the time of Compian's sentencing hearing, the new law was in effect, but courts of appeal were split about whether it created a rebuttable presumption (*People v. Walker* (2022) 86 Cal.App.5th 386, reversed by *Walker, supra*, 16 Cal.5th 1024) or required a court to engage in a holistic approach with special emphasis on any mitigating circumstances that weigh strongly in favor of dismissal, in the absence of a finding dismissing an enhancement would endanger public safety (*People v. Ortiz* (2023) 87 Cal.App.5th 1087).  Our California Supreme Court resolved that dispute while Compian's case was on appeal by agreeing with *Ortiz*.

Thus, while *Walker* clarified *how* a trial court should exercise its discretion, it did not clarify that a trial court *had* discretion in the first place.  Here, the trial court knew it had discretion but declined to exercise it because of Compian's extensive criminal history.  The trial court thus cited Compian's failure to take self-improvement programs and possession of contraband, including weapons and narcotics, in prison.  Stated otherwise, the trial court found that dismissing an enhancement would endanger public safety.  Even if the trial court did not use those precise words, the court " 'is not required to state reasons for declining to exercise its discretion under section 1385' [citations], and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary' [citation]." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637; see also *People v. Gutierrez, supra*, 58 Cal.4th at p. 1390.)

Compian has not shown that whether the trial court believed that section 1385, subdivision (c), created a rebuttable

14

presumption or required placing a special emphasis on mitigating circumstances would have impacted that finding. That is, whether dismissing an enhancement would endanger public safety is a separate inquiry from whether a mitigating circumstance weighs greatly in favor of dismissing an enhancement. Section 1385, subdivision (c), states that the presence of a mitigating factor weighs greatly in favor of dismissing an enhancement "*unless*" the trial court finds that doing so would endanger public safety. (Italics added.) A trial court thus need engage in the weighing process described in *Walker* only if it has found that dismissing the enhancement would not endanger public safety, meaning dismissal would not result in physical injury or other serious danger to others. (§ 1385, subd. (c)(2).) The trial court here found that dismissing an enhancement would endanger public safety. (See, e.g., *People v. Cota* (2023) 97 Cal.App.5th 318, 337 [§ 1385, subd. (c)(2)(B) does not require dismissal of enhancement when it would endanger public safety]; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 291 [same as to § 1385, subd. (c)(2)(C)].) The trial court therefore had no occasion to reach the weighing process that *Walker* clarified.

Compian, however, cites *Salazar*, *supra*, 15 Cal.5th 416, to support his argument that remand is required. In that case, the defense presented evidence at the sentencing hearing that Salazar had a history of mental illness since age 10 and had been diagnosed with a form of schizophrenia. Despite this diagnosis, the trial court sentenced Salazar to the middle term for his crime and denied a *Romero* motion, based on his " 'long and continuous criminal history.' " (*Id.* at p. 422.) While Salazar's appeal was pending, the Legislature enacted Senate Bill No. 567. That bill

15

amended section 1170 to provide that " 'unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if,' among other things, the defendant 'has experienced psychological, physical, or childhood trauma,' and this trauma 'was a contributing factor in the commission of the offense.' " (*Salazar*, at p. 423.)

The *Salazar* court rejected the Attorney General's argument that the record clearly indicated the trial court would have imposed the same sentence had it known the scope of its discretion. (*Salazar*, *supra*, 15 Cal.5th at pp. 426–427.) The court noted that the new law created a presumption in favor of the lower term if a qualifying trauma contributed to the crime's commission. (*Id.* at p. 426.) There was evidence that Salazar had a qualifying trauma, and although the trial court referenced Salazar's extensive criminal history, it also noted several mitigating factors in that history, including how drug use affected Salazar's criminal history. (*Id.* at p. 427.) The court concluded that this was "simply not the kind of record upon which we can conclude that there is a clear indication that the sentencing court would have exercised its discretion under current section 1170 to impose the same middle term as before." (*Salazar*, at pp. 427–428.)

*Salazar* is distinguishable because the relevant law was not in effect when the defendant was sentenced, and therefore the trial court was unaware of the presumption favoring the low term if Salazar had a qualifying trauma. In contrast, section 1385, subdivision (c), was in effect at Compian's resentencing hearing, so the trial court here knew it had to consider any mitigating

16

circumstances. We presume the trial court knew and applied the law and all relevant factors absent evidence to the contrary. (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1390; *People v. Brugman, supra*, 62 Cal.App.5th at p. 637.) Given that presumption and the trial court's express statement that it was declining to exercise its discretion to dismiss an enhancement, we cannot find that the trial court abused its discretion.[6]

III. Custody credits

At the resentencing hearing, the trial court directed the department to calculate Compian's actual credits. However, the parties agree that the trial court had to calculate the credits. When a defendant is resentenced, "the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29.) Therefore, the trial court had to recalculate Compian's credits, which the parties further agree totals 3,264 days, calculated as 3,141 actual days and 123 days of presentence conduct credits.

---

[6]     Because we conclude that remand under section 1170.18 is unnecessary, we need not address Compian's request that we direct the trial court to order an updated probation report.

## DISPOSITION

The matter is remanded with the direction to the trial court to modify the judgment to award custody credits in the amount of 3,141 actual days plus 123 days of presentence conduct credits, for a total of 3,264 days and to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

ADAMS, J.

GAAB, J.*

---

\* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.